UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NABIL KHALIL, et al.,


                                    Plaintiffs,

                                                        DECISION AND ORDER

                                                        02-CV-6491L

                    v.

THE FARASH CORPORATION, et al.,


                                    Defendants.
_____


        This is an action brought by three married couples on behalf of themselves and their minor
children against the owners and manager of an apartment complex where plaintiffs formerly lived,
alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*  Plaintiffs allege that
defendants discriminated against them on account of their familial status through defendants'
adoption and enforcement of a rule prohibiting children from playing outdoors in the grounds and
common areas, immediately adjacent to the tenants' dwellings.   Defendants have moved for
summary judgment dismissing the complaint, and plaintiffs have cross-moved for "partial" summary
judgment on their claims based on a disparate-impact theory, *i.e.*, that defendants' application of a
facially neutral rule had a disproportionate adverse impact on families with children.

# FACTUAL BACKGROUND

Many of the relevant facts have been set forth in this Court's prior decision denying defendants' pre-discovery motion for summary judgment, 260 F.Supp.2d 582 (W.D.N.Y. 2003), and will not be repeated at length here. Plaintiffs are three married couples, who bring this action on behalf of themselves and their minor children: Nabil and Haifa Khalil, who have three children; Jude and Eva Banahene, who also have three children; and Randall and Abby Thomas, who have four children. All the plaintiffs became tenants of defendants at various times in the 1990s, and they all resided at Chateau Square, which is part of the Briar Manor/Chateau Square housing complex ("the complex") in Brighton, New York.

Briar Manor consists of several hundred apartments, and Chateau Square comprises fifty-four townhouses. Defendants Jaylynn, Inc. and Max Farash are the owners of Briar Manor and Chateau Square, respectively. Defendant Farash Corporation ("Farash") manages the entire complex.

At issue in this case is Rule 1 of defendants' "Rules and Regulations - Townhouses", a document that is attached to each tenant's lease and which each tenant is required to sign in order to indicate his willingness to comply with the Rules. The document states that the purpose of the Rules is to provide for "the care, comfort and safety of the residents of the building in which the [tenants'] Dwelling is located, and the adjacent or surrounding grounds." Dkt. #4 Ex. D. Rule 1 states that "Tenants, Occupants and their respective guests shall not ... [u]se the surrounding grounds [*i.e.*, the grounds surrounding the apartment buildings] as a place to congregate or allow children to play." *Id*. There is a playground at the complex and there are some other common areas where

tenants and children are allowed to congregate, but Rule 1 prohibits children from playing in the yards adjacent to the townhouses themselves. Plaintiffs allege that Rule 1 was disproportionately enforced against families with children, and that adults who congregated near the townhouses were rarely cited for violating the rule.

All of the plaintiffs moved out of the complex on various dates in 2002. Again, the particular facts leading up to each family's leaving the complex are set forth in the Court's prior decision, but in short, defendants declined to renew the Khalils' and the Banahenes' yearly leases when they expired, chiefly because of plaintiffs' repeated violations of Rule 1. By their own admission, the Thomases moved out of their own accord when their lease expired, but they allege that they did so in part because they had been cited by defendants for violating Rule 1, and were convinced that defendants would have refused to renew their lease because of those violations.

## PROCEDURAL BACKGROUND

Plaintiffs filed the complaint in this action on September 25, 2002. They allege that by making and enforcing the rule against children playing outdoors near the buildings, by refusing to renew the leases of tenants whose children have broken that rule, and by "creating a hostile living environment for families with children," defendants have discriminated against plaintiffs on the basis of their familial status, in violation of the FHA. Plaintiffs allege a violation of both 42 U.S.C. § 3604(a), which makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of ... familial status," and § 3604(b), which makes it unlawful "[t]o

discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of ... familial status ... ." Plaintiffs seek declaratory relief, an order enjoining defendants from discriminating against anyone on the basis of familial status, and compensatory and punitive damages.

The Court denied defendants' pre-discovery motion for summary judgment on April 23, 2003. With respect to plaintiffs' disparate-impact claim, I stated that, "[v]iewing the record in the light most favorable to plaintiffs, the non-moving parties, plaintiffs might be able to show that Rule 1, even though facially neutral, had a discriminatory impact on children, or families with children." 260 F.Supp.2d at 589 (footnote omitted).

I also found that "for purposes of [the summary judgment] motion[,] ... plaintiffs ha[d] made out a *prima facie* case of disparate treatment." *Id.* In particular, I stated that although defendants asserted that the Khalils and the Banahenes chose to move out of the complex, "there is certainly some evidence that defendants indicated an intention not to offer any further extensions at some point." *Id.* (footnote omitted). I added that "even if plaintiffs were not forced to leave, they could still state a claim [under 42 U.S.C. § 3604(b)] based on discrimination that they endured during their tenancy at the complex." *Id.*

The Court went on to hold that defendants had proffered legitimate reasons for the existence and enforcement of the rule against children playing in the common areas around the buildings, *i.e.*, concern for the children's safety and for the comfort and convenience of other tenants. *Id.* at 589-90. I also found, however, that questions of fact existed as to the ultimate issues in this case, including whether defendants' proffered reasons were a pretext for discrimination and whether some alternative to Rule 1 would serve its legitimate purposes with less discriminatory effects. I stated

- 4 -

that "[a]fter discovery, it may well be that defendants can show a pattern of enforcement against all violators of Rule 1, but if only children are routinely prosecuted for violations, such conduct by the landlord could constitute discrimination." *Id.* at 591.  I also stated that "[f]acts adduced through discovery may yet show conclusively that defendants' actions were reasonable and nondiscriminatory," but that "[a]t this early stage of the litigation, ... the factual disputes presented here cannot be resolved by the Court as a matter of law." *Id.*

Discovery in this case is now complete.  Defendants have again moved for summary judgment, alleging that none of the evidence produced during discovery suggests that defendants discriminated against plaintiffs because of plaintiffs' familial status.  Plaintiffs have cross-moved for summary judgment on their claims based on a theory of disparate impact.  They concede that issues of fact preclude summary judgment in their favor on their claims of disparate treatment.


**DISCUSSION**


**I. FHA Claims Under 42 U.S.C. §§ 3604(a) and (b)–General Principles**

"A plaintiff can make out a claim of discrimination [under the FHA] either 'on a theory of disparate impact or one of disparate treatment.'"  *Fair Housing in Huntington Committee Inc. v. Town of Huntington, N.Y.* ("*Huntington*"), 316 F.3d 357, 366 (2d Cir. 2003).  Plaintiffs here allege both theories.  That is, they claim that defendants intentionally discriminated against families with children by deliberately enforcing Rule 1 only against such tenants, and that defendants' application of a facially neutral rule had a disproportionate impact on families with children.

Claims of intentional discrimination, *i.e.*, disparate treatment, under the FHA are analyzed under the familiar *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting analysis established for employment discrimination cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48-49 (2d Cir.), *cert. denied*, 537 U.S. 813 (2002).

Under this scheme, plaintiffs must first make out a prima facie case of discrimination. *Id.* at 49. If the plaintiffs make out a prima facie case, then the burden of production shifts to the defendants to provide a legitimate, nondiscriminatory\ reason for their decision. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). If defendants meet that burden, "the *McDonnell Douglas* framework ... disappear[s] and the sole remaining issue [is] discrimination *vel non*." *Id.* (quoting *Reeves*, 530 U.S. at 142-43). Plaintiffs "must then prove that the defendants intentionally discriminated against them on a prohibited ground." *Id.* (citing *Reeves*, 530 U.S. at 143).

To make out a *prima facie* case of disparate treatment under § 3604(a), plaintiffs must show that (1) they are members of a class protected by the FHA; (2) they sought, and were qualified, to rent (or continue renting) the dwellings in question; (3) defendants refused to rent to plaintiffs; and (4) the housing was put on the market or was rented to other tenants. *Cabrera v. Jakabovitz*, 24 F.3d 372, 381 (2d Cir.), *cert. denied*, 513 U.S. 876 (1994). "To establish a *prima facie* case [of disparate treatment] predicated upon 42 U.S.C. § 3604(b) the plaintiff[s] must make a modest showing that a member of a statutorily protected class was not offered the same terms, conditions or privileges of rental of a dwelling or not provided the same services or facilities in connection therewith made available to others under circumstances giving rise to a reasonable inference of prohibited

discrimination." *United States v. Town Hall Terrace Ass'n*, No. 95-CV-0533, 1997 WL 128353, *4 (W.D.N.Y. Mar. 14, 1997).

As stated, plaintiffs also base their claims on a theory of disparate impact. "In order to make out a prima facie case under the FHA on a theory of disparate impact, a plaintiff must demonstrate that an outwardly neutral practice [or rule] actually or predictably has a discriminatory effect; that is, has a significantly adverse or disproportionate impact on" the protected class. *Huntington*, 316 F.3d at 366. *See also Hack v. President and Fellows of Yale College*, 237 F.3d 81, 88 (2d Cir. 2000) (in order to state FHA claim based on disparate impact, plaintiffs must show that the identified policy, although adopted for neutral reasons, has a discriminatory impact on the availability of housing for the protected class, or the terms and conditions on which the housing is offered), *cert. denied*, 534 U.S. 888 (2001), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

"A plaintiff [alleging disparate impact] need not show the defendant's action was based on any discriminatory intent," but "must prove the [facially neutral] practice 'actually or predictably results in ... discrimination.'" *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003) (quoting *Hack v. President & Fellows of Yale College*, 237 F.3d 81, 90 (2d Cir. 2000)). "Furthermore, the plaintiff must show a causal connection between the facially neutral policy and the alleged discriminatory effect." *Id.*

As with disparate-treatment claims, courts addressing disparate-impact claims employ a burden-shifting analysis. "Once a plaintiff establishes a prima facie case [of disparate impact], the burden shifts to the defendant[s] to 'prove that [their] actions furthered, in theory and in practice, a legitimate, bona fide ... interest and that no alternative would serve that interest with less

discriminatory effect.'" *Salute v. Stratford Greens Garden Apartments* 136 F.3d 293, 302 (2d Cir. 1998) (quoting *Huntington Branch, N.A.A.C.P. v. Town of Huntington*, 844 F.2d 926, 936 (2d Cir.), *aff'd*, 488 U.S. 15 (1988) (per curiam)).

## II. Application to this Case

## A. Disparate Impact

Applying these standards here, I find that plaintiffs have failed to make out a prima facie case of disparate impact. First, I am not convinced that this case is even appropriate for application of disparate-impact analysis, which requires that a facially neutral policy have discriminatory effect.

Rule 1 provides that "Tenants, Occupants and their respective guests shall not ... [u]se the surrounding grounds as a place to congregate or allow children to play." Arguably, with respect to children, the rule is *not* facially neutral; as I noted in my prior decision on the motion to dismiss, "the rule could be read to mean that children are not allowed on the surrounding grounds even if they are not 'congregating' there. In other words, a tenant could violate this rule if his child was alone in the designated area playing silently with a doll." *Khalil*, 260 F.Supp.2d at 589. When read that way, the rule is not facially neutral as to children–or families with children–since it singles out children for different treatment.

At any rate, it is clear from reading plaintiffs' papers that the gist of their claims is really that the rule is facially discriminatory, or that the rule is applied in a discriminatory manner, *i.e.*, that the clause prohibiting tenants from "congregating" outside the townhouses was routinely ignored, but that the clause prohibiting children from playing in those same areas was generally enforced. For example, plaintiffs' attorney states in her affidavit that "Defendants enforce Rule #1 of the rules and

regulations *in a way that discriminates* against families with children," and that "Plaintiffs assert that despite the fact that they, and other adult tenants and their guests regularly congregated outside, neither they, nor any other adult tenants of whom they were aware, ever received lease violation notices." Dkt. #46-1 ¶¶ 12, 13.  That is essentially a claim of disparate treatment, and plaintiffs' claims are therefore more properly subject to disparate-treatment, not disparate-impact, analysis. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) (disparate-impact analysis was inappropriate where only claim properly raised before district court was based on disparate-treatment theory); *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501 (10th Cir. 1995) (FHA claim arising out of city's conditions on issuing group home a conditional use permit was challenge to facially discriminatory actions and not effects of facially neutral actions, so that legal framework for disparate-impact claims was inappropriate).

Plaintiffs' disparate-impact claims are also flawed in other ways.  Plaintiffs contend that "almost every lease violation notice of the many that went out citing violation of Rule #1, went to families with children," and that "the Khalils and the Marshalls, both families with children were the only tenants to not have their lease renewed due to violations of Rule #1."  Plaintiff's Memorandum of Law (Dkt. #38) at 6.  There are several problems with these assertions.  First, based on the documentary evidence, it appears that almost *none* of the lease violation notices, to tenants with or without children, explicitly referenced Rule #1 or any other particular rule.  *See* Dkt. #36-1 at 10-26.

Some of the notices do appear to allude to Rule #1, as they remind the recipients that children are not allowed to play around the townhouses.  *Id.*  At the same time, however, some of the notices sent to tenants without children can also be read as being based on Rule 1.  *See, e.g.*, Dkt.

#46-4 at 3 (notice to five adult male tenants reminding them that under their lease, they "agreed not to congregate in the surrounding areas," and that "[p]laying football in the common areas is not allowed"); Dkt. #46-4 at 5 (notice to four adult female tenants stating that other tenants had complained about a party at female tenants' townhouse, at which there were "people outside that were using foul language"); Dkt. #46-4 at 7 (notice to three adult male tenants asking them to "please contain [their] parties to the inside of [their] townhouse").

At any rate, the total number of such notices is quite small relative to the number of units at the complex. Besides the several notices received by plaintiffs, it appears that three other couples received notices about their children playing outside. *Id.* at 16, 19-22. In addition, according to plaintiffs, only two sets of tenants, both of them families with children, have had their leases not be renewed due to violations of Rule #1.[1]

Such numbers are too small to be of any statistical significance, especially considering that the complex consists of some 750 living units. Dkt. #34-6 ¶ 1. *See Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 575-76 (2d Cir. 2003) (noting that "[s]tatistical evidence is ... normally used in cases involving fair housing disparate impact claims"). As the Second Circuit has observed,

---

[1]Plaintiffs identify those tenants as "the Khalils and the Marshalls." Dkt. #28 at 6. It is not clear whether the reference to the Marshalls, who are not a party to this action, is a clerical error. Though the record does reflect that the Marshalls received lease violation notices, it does not appear to contain any evidence that the Marshalls' lease was not renewed because of violations of Rule #1. Plaintiffs may have meant to say that the Khalils and the Banahenes were the tenants in question. Even if all three sets of tenants were denied renewals, however, that would not change my analysis.

I also note that defendants allege that other tenants without children were denied lease renewals due to violations of Rule #1. *See* Elaine Bell Aff. (Dkt. #34-4) ¶¶ 24-27. That dispute does not create an issue of material fact, however, since even accepting the truth of plaintiffs' allegations, their disparate-impact claim fails for the reasons stated in the body of this Decision and Order.

"where statistics are based on a relatively small number of occurrences, the presence or absence of statistical significance is not a reliable indicator of disparate impact." *Waisome v. Port Authority of New York and New Jersey*, 948 F.2d 1370, 1379 (2d Cir. 1991). *See also Pollis v. New School for Social Research*, 132 F.3d 115, 121 (2d Cir. 1997) ("The smaller the sample, the greater the likelihood that an observed pattern is attributable to other factors and accordingly the less persuasive the inference of discrimination to be drawn from it"); *Stout v. Potter*, 276 F.3d 1118 (9th Cir. 2002) (affirming district court's dismissal of a disparate-impact claim because "[a] sample involving 6 female applicants in a pool of 38 applicants is likely too small to produce statistically significant results"); *Lewis v. Aerospace Community Credit Union*, 114 F.3d 745, 750 (8th Cir. 1997) ("The sample size of three nonbargaining-unit employees over the age of fifty is simply too small independently to support a [disparate-impact] discrimination claim"), *cert. denied*, 523 U.S. 1062 (1998); *United States v. Heatley*, 39 F.Supp.2d 287, 308 n. 11 (S.D.N.Y. 1998) (stating, with reference to defendant's comparison of himself to five other defendants in an attempt to show that prosecutors refused to enter into cooperation agreement with him on account of his race, that "this sample is far too small to give rise to any inference of discrimination whatsoever"). "It is for this reason that, in cases involving small or marginal samples, other indicia raising an inference of discrimination must be examined." *Waisome*, 948 F.2d at 1379. As explained below in the Court's discussion of plaintiffs' disparate-treatment claims, such other evidence is lacking here.

Finally, I note that to establish a disparate-impact claim under 42 U.S.C. § 3604, plaintiffs must demonstrate that a facially neutral policy actually or predictably leads to under-representation of families with children in the housing relative to the general population. *See Hack*, 237 F.3d at 90-91. Plaintiffs have made no such showing, nor do they appear to dispute defendants' assertions

that well over half of the units at Chateau Square (where all the plaintiffs lived) are typically rented to families with children, or that the tenants who moved into plaintiffs' vacated units were all families with children.[2]  *Id.* at 91 ("The [plaintiff] students do not allege that Yale's policy has resulted in or predictably will result in under-representation of Orthodox Jews in Yale housing. Therefore, their claim fails").

**B. Disparate Treatment**

I also find that plaintiffs have failed to make out a claim of disparate treatment.  The evidence shows that adults *were* cited for violations of Rule 1, and that Rule 1, as well as other rules governing tenant behavior, were enforced against adults as well as against children and families with children.  As stated, notices were sent to adult tenants about matters such as playing football near the townhouses and party guests being outside and disturbing neighboring tenants.  The record also contains a February 2, 2001 notice informing the recipients that their lease was being terminated because of continued complaints about "loud music coming from [their] dwelling," Dkt. #34-3 at 68, and a similar notice dated June 4, 2002, informs the recipients that their lease was being terminated because of complaints about "the volume and frequency of noise coming from [their] apartment."  Dkt. 34-3 at 72.  The female tenants who received a notice about their guests being outside using foul language, *see supra* at __, also received a non-renewal notice the following year. Dkt. #46-4 at 4.

---

[2]Apparently a smaller percentage of the units at Briar Manor are occupied by families with children, but that is not surprising, as many of the units at Briar Manor are one-bedroom apartments, whereas the units in Chateau Square are all two- and three-bedroom townhouses. Bell Aff. (Dkt. #34-4) ¶¶ 4, 5.

Furthermore, the evidence indicates that when plaintiffs or other families with children were sent rule violation notices, it was not because of some technical rule violation, but because their children had been, or were reported by other tenants to have been, creating a genuine disturbance or causing a problem or dangerous situation.  The following examples will illustrate this:

● June 25, 1996:  letter to the Banahenes stating that their children had been seen "playing in the street and the other residents are afraid that they are going to be seriously injured." Dkt. #34-3 at 57.

● September 19, 1998:  memo stating that certain tenant had complained about the Khalils' "kids screaming outside his kitchen window."  Dkt. #34-3 at 52.

● June 8, 2001:  letter to the Khalils stating that their neighbors had complained about the Khalils' children playing in back of their townhouses and that "[t]he neighbors [we]re afraid that a soccer ball could break a window and cause damage."  Dkt. #36 at 11.

● August 7, 2001:  letter to the Khalils stating that their children had again been playing soccer behind the townhouses.

● April 16, 2002:  notice to all Chateau Square residents stating that in the past week, children had been seen playing between cars in the parking lot, and riding their bikes on the wet lawns, causing ruts and damaging the grass just as it was beginning to grow.

● July 29, 2002:  letter from tenant to Brian Manor manager complaining that the Khalils' son "ha[d] gone up to [the tenant's] son and spits [sic] on him, and some of the other kids in the complex," that the Khalils' son "will go around and hit the kids with sticks," that "on one occasion he went after [the tenant's] son with a broken beer bottle and scratched his forearm," and that when the tenant confronted Mrs. Khalils about it, "her response was two thumbs-up."  Dkt. #34-3 at 55.

● Undated notices to the Marshalls, the Kims, the Banahenes and the Khalils stating that their neighbors had complained about the Marshalls' children "riding their bikes on the lawn, running and yelling" near the neighbors' townhouses "afterschool and into the evening," which "caused the neighbors to have to close their windows on such nice days because they couldn't hear their own television."  Dkt. #36 at 19, 21, 23, 25.

● Undated notice to the Marshalls relaying a complaint about their children "skateboarding on the sidewalk and between cars" and "playing in the parking lot."  Dkt. #36 at 20.

This is clearly, then, *not* a case in which any tenants were cited for violating Rule 1 because their "child was alone in the designated area playing silently with a doll." *Khalil*, 260 F.Supp.2d at 589. The notices went out because the children in question were doing something dangerous, either to themselves or to property, or because they were disturbing other tenants. Whether plaintiffs' children tended to (or were permitted by their parents to) engage in such behavior more often than other tenants' children, or even if children in general tended to engage in such behavior more often than adults, I see nothing discriminatory about defendants' application of the rule.[3]

Moreover, aside from the violations notices themselves, there is simply no other evidence of discriminatory animus on defendants' part. As stated, the evidence shows that a substantial proportion of defendants' tenants are families with children, and in fact the tenants who moved into plaintiffs' units after they left were all families with children. If defendants harbor any hostility toward children, it is certainly not apparent from the record.


## CONCLUSION


Plaintiffs' motion for partial summary judgment (Dkt. #35) is denied. Defendants' motion for summary judgment (Dkt. #40) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        September 21, 2006.

------------------------

[3]This same evidence also points out another flaw in plaintiffs' disparate-impact claim: even a more narrowly-drawn rule, such as plaintiffs' suggested rule providing that tenants could not engage in "dangerous behavior" on the grounds, *see* Plaintiffs' Reply Mem. (Dkt. #50-1) at 7, would not have made any difference here, since plaintiffs' children still would have been in violation of the rule.